The order below is hereby signed.

Signed: April 29 2026



_Elizabeth L. Gunn_
_U.S. Bankruptcy Judge_

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | |
| **Jaspreet Kaur Attariwala,** | **Case No. 19-00828-ELG** |
| **Debtor.** | **Chapter 13** |
| | |
| **Bioconvergence LLC,** | **Adv. Pro. 20-10009-ELG** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **Jaspreet Kaur Attariwala,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT</u>

Before the Court are the *Motion for Summary Judgment* (the "Motion") filed by Bioconvergence LLC d/b/a Singota Solutions (the "Plaintiff"), the *Opposition* filed by Jaspreet Kaur Attariwala (the "Debtor"), and the Plaintiff's *Reply*.[1] Upon consideration of the pleadings, the arguments of counsel at the hearing held on June 26, 2025, and for the reasons set forth herein, the Court grants the Motion.

### I.      Jurisdiction and Standard

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Memorandum Opinion sets forth the Court's findings of fact

---

[1] *See Mot. Summ. J.*, ECF No. 34; *Mem. of P. & A. in Supp. of Mot. Summ. J.*, ECF No. 34-1; *Opp'n to Mot. of Bioconvergence LLC d/b/a Singota Solutions for Summ. J.*, ECF No. 39; *Reply in Supp. of Mot. Summ. J.*, ECF No. 40.

and conclusions of law in accordance with Bankruptcy Rule 7052.[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.[3]

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] A fact is material where it might affect the outcome of the suit under the governing law, and a dispute is genuine if resolution thereof could establish an element of a claim or defense and, therefore, affect the outcome of the action.[5] When evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party and accept the non-moving party's evidence as true.[6] The movant has the burden of showing that there is no genuine issue of fact and they are entitled to judgment as a matter of law.[7]

## II.     Uncontested Facts[8]

### A. Pre-Litigation Conduct

The Plaintiff first employed the Debtor as a Senior Business Development Manager in September 2015.[9] Effective September 28, 2015, the parties executed an employment agreement

---

[2] Unless specifically indicated otherwise, all section references are to Title 11 of the United States Code (the "Bankruptcy Code"). The Federal Rules of Bankruptcy Procedure shall be referred to as the "Bankruptcy Rules," and the Federal Rules of Civil Procedure shall be referred to as the "Civil Rules" herein.

[3] Fed. R. Bankr. P. 7052.

[4] Fed. R. Civ. P. 56(c) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Celotex*, 477 U.S. at 322.

[6] *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013).

[7] *Celotex*, 477 U.S. at 323; *Beck v. Test Masters Educ. Servs.*, 994 F. Supp. 2d 90, 94 (D.D.C. 2013).

[8] As discussed *infra*, the United States District Court for the Southern District of Illinois held a multi-day bench trial in the case of *Bioconvergence LLC v. Attariwala* and issued two memorandum decisions and a judgment in favor of Plaintiff. Findings of Fact and Conclusions of Law Following Bench Trial, *Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG (S.D. Ind. Dec. 21, 2023), ECF No. 603 [hereinafter Findings of Fact]; Order on Damages, Att'y Fees, Litigation Expenses, and Costs, *Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG (S.D. Ind. Mar. 26, 2024), ECF No. 613; Inj. and Final J., *Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG (S.D. Ind. Mar. 26, 2024), ECF No. 614. Because there has been a trial on the merits, and because the Debtor does not contest the findings (factual or legal), the Court may rely thereon as undisputed facts for the purposes of the pending Motion. *Opp'n to Mot. of Bioconvergence LLC d/b/a Singota Solutions for Summ. J.*, ECF No. 39, at 1.

[9] Findings of Fact, *supra* note 8, at 2–4.

(the "Employment Agreement") in which the Debtor agreed to neither solicit certain clients and prospective clients of the Plaintiff, nor to transmit, provide, or copy the Plaintiff's confidential information (the "Confidential Information"), which was defined in the Employment Agreement to include:

> [A]ny proprietary, confidential, or company-sensitive information and materials which are the property of or relate to the [Plaintiff] or business of the [Plaintiff]. Confidential Information shall include without limitation all information and materials created by, provided to, or otherwise disclosed to [the Debtor] in connection with [the Debtor]'s employment with the [Plaintiff] (excepting only information and materials already known by the general public), including without limitation (i) trade secrets, (ii) the names and addresses of the [Plaintiff]'s past, present or prospective contributors, beneficiaries or business contacts, and all information relating to such contributors, beneficiaries, or business contacts, regardless of whether such information was supplied or produced by the [Plaintiff] or such contributors, beneficiaries, or business contacts; and (iii) information concerning the [Plaintiff]'s affiliates, financing sources, profits, revenues, financial condition, fund raising activity, and investment activity, business strategies, and software used by the [Plaintiff] and associated layouts, templates, processes, documentation, databases, designs, and techniques.[10]

In October 2018, the Debtor applied for a position with Emergent BioSolutions ("Emergent"), one of the Plaintiff's competitors.[11] Throughout October and November 2018, the Debtor and a senior director with Emergent engaged in email and in-person discussions regarding the Debtor's possible move from the Plaintiff to Emergent.[12] During the discussions, the Debtor forwarded several emails, one of which included a prospective client lead, from her business email account to her personal email account.[13] Two days after interviewing at Emergent in late November 2018, the Debtor forwarded the lead to the senior director at Emergent.[14]

On December 10 and 11, 2018, after discussing the forthcoming offer with Emergent, the Debtor forwarded several more emails containing information on the Plaintiff's clients, prospects,

---

[10] *Id.* at 5–7.
[11] *Id.* at 13.
[12] *Id.* at 14.
[13] *Id.*
[14] *Id.*

and leads, and a confidential checklist procedure developed by the Plaintiff, from her business email account to her personal email account.[15] Emergent offered the Debtor a position, and the Debtor accepted on December 11, 2018.[16] Three minutes after accepting the job offer, the Debtor logged into her password-protected business account, copied more than 250 documents containing the Plaintiff's Confidential Information, generated six reports containing Confidential Information relating to the Plaintiff's clients and prospective clients, and transferred the documents and reports to a folder named "Jessie Docs" on her business laptop.[17] On December 12, 2018, the Debtor gave the Plaintiff notice of her resignation.[18]

On December 19, 2018 (while still employed by the Plaintiff), the Debtor copied more than 10,000 emails containing the Plaintiff's confidential and proprietary information from her business email account, saved them in the "Jessie Docs" folder, and then copied the folder to an external hard drive and her personal laptop.[19] The Debtor deleted emails and client folders from her business email account and Microsoft OneDrive account.[20] The Debtor also used her business computer and personal Google account to create a cloud-based document entitled "Leads — Emergent," wherein she added more information and files related to the Plaintiff's current and prospective clients.[21] The Debtor's access to the Plaintiff's system was deactivated after the Debtor's exit interview on December 21, 2018.[22]

Following the Debtor's departure, the Plaintiff discovered that it could not locate information on current and prospective clients and projects on which the Debtor had worked and conducted an investigation which revealed, among other things, that the Debtor forwarded large amounts of the Plaintiff's Confidential Information and had informed several of the Plaintiff's

---

[15] *Id.* at 14–15.
[16] *Id.* at 15.
[17] *Id.* at 15–16, 29.
[18] *Id.* at 16.
[19] *Id.* at 18–19.
[20] *Id.* at 17–19.
[21] *Id.*
[22] *Id.* at 20.

clients of her transition to Emergent.[23] On February 27, 2019 (the date the Plaintiff commenced the first case against the Debtor, as discussed *infra*), the Debtor copied the "Jessie Docs" folder from her personal laptop to another device or account.[24]

### B. District Court Litigation and Judgment

On February 27, 2019, the Plaintiff commenced suit against the Debtor (the "District Court Litigation"), alleging the unlawful taking of the Plaintiff's Confidential Information and trade secrets in the Monroe Circuit Court, which was subsequently removed to the United States District Court for the Southern District of Indiana (the "District Court").[25] Specifically, the Plaintiff brought the following claims against the Debtor: Count I: Breach of Contract; Count II: Violation of the Indiana Uniform Trade Secrets Act (the "IUTSA"); Count III: Violation of the Defend Trade Secrets Act (the "DTSA"); Count IV: Breach of Fiduciary Duty/Duty of Loyalty; Count V: Computer Trespass; Count VI: Violations of the Computer Fraud and Abuse Act;[26] Count VII: Tortious Interference with Business Relationships; Count VIII: Unjust Enrichment; Count IX: Conversion; Count X: Theft; Count XII: Indiana Crime Victims Relief Act; Count XIII: Civil Conspiracy; and Count XIV: Permanent Injunctive Relief.[27]

After a three-day bench trial in August 2023, the District Court entered a 78-page *Findings of Fact and Conclusions of Law Following Bench Trial* (the "Findings of Fact"), ultimately finding the Debtor liable to the Plaintiff on Counts I (Breach of Contract), II (IUTSA), and III (DTSA).[28] The District Court did not rule on Counts IV, V, VII, VIII, IX, X, XII, and XIII, having deemed them abandoned during the trial.[29] The District Court granted a permanent injunction against the

---

[23] *Id.* at 20–21.

[24] *Id.* at 24–25.

[25] Jaspreet Attariwala's Notice of Removal, *Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG (S.D. Ind. Apr. 30, 2019), ECF No. 1.

[26] Count VI was abandoned prior to trial.

[27] First Am. Verified Compl. for Injunctive Relief and Damages and Jury Demand, *Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG, at 11–19 (S.D. Ind. June 18, 2019), ECF No. 30. Count XI: Receiving Stolen Property was solely against the Debtor's spouse.

[28] Findings of Fact, *supra* note 8, at 76.

[29] *Id.* at 65–66

Debtor under Count XIV. In finding the Debtor liable on Count I (Breach of Contract), the District Court found by preponderance of the evidence that she was entrusted with the Plaintiff's Confidential Information as described in the Employment Agreement and that she breached the same by accessing the Plaintiff's system, copying certain information, forwarding it to her personal email account and devices, and retaining it for purposes other than to benefit the Plaintiff.[30] Despite the clear breach of contract, the District Court found that the Plaintiff did not establish any actual (consequential) damages resulting from the Debtor's breach of the confidentiality provisions of the contract.[31] Further, because the Plaintiff did not prove that any clients actually left for Emergent, the Plaintiff did not establish it was damaged by the Debtor's breach of the non-solicitation portion of the Employment Agreement.[32] Even without damages, the District Court noted that the Debtor did not mitigate any potential damages due to her recalcitrance and refusals regarding the location and return of the Confidential Information taken and stored on personal devices and accounts.[33] Ultimately, while the District Court noted the Plaintiff could be entitled to nominal damages where actual (consequential) damages were not proven, it ultimately did not assess damages on Count I (Breach of Contract).[34]

In granting relief on the statutory claims of misappropriation of trade secrets under the IUTSA and DTSA (Counts II and III, respectively), the District Court found by preponderance of the evidence that the Debtor misappropriated the Plaintiff's trade secrets through the "wholesale and intentional harvesting" of the Confidential Information and intended to use the same to harm the Plaintiff and advance her career with Emergent.[35] The District Court found that, similar to the breach of the non-compete portion of the Employment Agreement, the Plaintiff failed to establish any actual (consequential) damages for lost profits based on the statutory violations of the IUTSA

---

[30] *Id.* at 63.

[31] *Id.* at 63–64.

[32] *Id.* at 64.

[33] *Id.* at 63–64.

[34] *Id.* at 64 (citing *Krupa v. TIC Int'l Corp.*, No. 1:22-cv-01951-JRS-MG, 2023 U.S. Dist. LEXIS 4039, at *4 (S.D. Ind. Jan 10, 2023)).

[35] *Id.* at 57–62.

and DTSA.[36] However, the District Court did find that the Plaintiff was entitled to an award of compensatory damages against the Debtor for her violations of the IUTSA and DTSA, including an amount covering all costs attributable to the Plaintiff's computer forensic experts' efforts to identify, locate, and remediate the electronically stored information on the Debtor's personal devices, accounts, or those of others acting in concert with her.[37] The District Court declined to grant an award of exemplary (punitive) damages due to the Plaintiff's lack of actual damages or competitive disadvantage.[38] Finally, under both the IUTSA and DTSA, the Plaintiff was statutorily entitled to reasonable attorneys' fees and litigation costs in addition to the compensatory damages.[39] The Plaintiff was provided with a 21-day period after entry of the Findings of Fact to file a detailed statement of requested compensatory damages as well as fees and costs.[40]

In addition to the District Court's specific findings on the affirmative causes of action, it emphasized and underscored the Debtor's "almost complete lack of candor" and "attempts to hide and minimize her acquisition" of the Plaintiff's Confidential Information.[41] Citing the Debtor's "failure to cooperate in the return of" the same, as well as her "pattern of obfuscation and recalcitrance in making known the details of her misappropriations throughout this litigation," the District Court found grounds to grant permanent injunctive relief (Count XIV) in favor of the Plaintiff.[42] Due to the passage of time and the fact that the Debtor had not worked in a related industry for more than four years, the Court found a narrowly tailored injunction permanently prohibiting the Debtor or anyone acting in concert with her from using or disclosing any of the Confidential Information was appropriate.[43]

---

[36] *Id.* at 69.

[37] *Id.* at 71.

[38] *Id.* at 71–72.

[39] *Id.* at 72, 76–77 (granting the Plaintiff "reimbursement of its reasonable attorney fees, costs, and litigation expenses as well as compensatory damages in an amount covering all costs attributable to [the Plaintiff's] computer forensic experts' efforts to identify, locate, and remediate [the Debtor's actions]").

[40] *Id.* at 71.

[41] *Id.* at 57–59.

[42] *Id.* at 73–76.

[43] *Id.* at 75–76.

After further briefing and a hearing on the question of the amount of damages, the District Court issued its *Order on Damages, Attorney Fees, Litigation Expenses, and Costs* (the "Damages Order"), awarding the Plaintiff compensatory damages in the amount of $586,315.48, representing all costs attributable to the Plaintiff's computer forensic experts' efforts less the previous $10,000.00 paid by the Debtor.[44] The District Court, in its discretion, awarded the Plaintiff reasonable fees and costs in the total amount of $623,197.45, consisting of $589,877.10 in fees and $33,320.21 in costs.[45] Combined, the total judgment entered by the District Court against the Debtor in favor of the Plaintiff was $1,209,512.93 (the "District Court Award").[46] As set out in the Findings of Fact, the entirety of the District Court Award was related to the judgment on Count II (the IUTSA) and Count III (the DTSA). Contemporaneously with the Damages Order, the District Court entered an *Injunction and Final Judgment* (the "Final Judgment," and together with the Findings of Fact and Damages Order, the "Final Orders") permanently enjoining the Debtor "and all those acting in concert with her . . . from transmitting, using, copying, acquiring, continuing to possess, or disclosing to others Plaintiff's confidential information or trade secrets still in their possession."[47] The Debtor did not appeal any of the Final Orders.

### C. Debtor's Chapter 13 Case and Adversary Proceeding

During the pendency of the District Court Litigation, on December 17, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 13 in this Court.[48] The chapter 13 case came less than two weeks after conclusion of a hearing in the District Court in which the Plaintiff sought to prevent the Debtor from continuing to work for Emergent.[49] The District Court entered

---

[44] Order on Damages, Attorney Fees, Litigation Expenses, and Costs, *Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG, at 12 (S.D. Ind. Mar. 26, 2024), ECF No. 613.

[45] *Id.* The Court notes that the total of $589,877.10 and $33,320.21 is $623,197.31 and not $623,197.45 as set forth in the Damages Order. The Damages Order sets forth the District Court's basis for the exercise of its discretion to allow only an amount equal to 25% of the Plaintiff's original request for $2,359,508.40 in fees and $133,280.83 expenses.

[46] *Id.*

[47] Inj. and Final J., *Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG, at 1 (S.D. Ind. Mar. 26, 2024), ECF No. 614.

[48] Official Form 101: Vol. Pet. For Individuals Filing for Bankr., *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Dec. 17, 2019), ECF No. 1.

[49] Findings of Fact, *supra* note 8, at 31–32.

an injunction order on December 18, 2019, and Emergent terminated the Debtor's employment on December 19, 2019.[50] The Plaintiff moved for relief from the automatic stay on December 31, 2019.[51] On January 30, 2020, the Court annulled the automatic stay to December 18, 2019 to effectuate the District Court's injunction and to allow the Plaintiff to proceed in the District Court.[52] In February 2023, the Court confirmed the Debtor's chapter 13 plan over the Plaintiff's objection, and the confirmation was affirmed on appeal in April 2024.[53] The Debtor completed payments under her plan in December 2024, the chapter 13 trustee filed her final report in September 2025.[54] The Debtor's discharge was entered on April 14, 2026.[55] Thus, the last matter to be resolved in the Debtor's case is the whether the debt owed by the Debtor to the Plaintiff arising out of the District Court Litigation is dischargeable.

On February 27, 2020, the Plaintiff filed a proof of claim (the "Claim") that included liquidated attorneys' fees of $359,258.05, litigation expenses of $7,374.08, expert fees of $19,161.50 as of the Petition Date, and an unliquidated claim contingent upon the District Court Litigation.[56] On March 13, 2020, the Plaintiff commenced the instant adversary proceeding, alleging in a single count that the Claim arose out of the Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and was thus nondischargeable pursuant to §§ 523(a)(4) and 1328(a)(2).[57] In June 2020, this case was effectively stayed pending

---

[50] *Id.* at 31–33.

[51] Emergency Mot. for Relief from Automatic Stay and Mem. in Supp. Thereof, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Dec. 31, 2019), ECF No. 12.

[52] Order Granting, in Part, Mot. for Relief from Automatic Stay, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Jan. 30, 2020), ECF No. 42.

[53] Order Overruling Obj. to Confirmation, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Feb. 3, 2023), ECF No. 293; Order Confirming Plan, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Feb. 3, 2023), ECF No. 294, *aff'd*, No. 23-cv-00499-CKK (D.D.C. Apr. 26, 2024), ECF No. 17.

[54] Chapter 13 Standing Trustee's Final Report and Account, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Sept. 5, 2025), ECF No. 355 (listing completion of plan payments in December 2024).

[55] Order of Discharge, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Apr. 14, 2026), ECF No. 375.

[56] Am. Proof of Claim No. 7-2, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Feb. 27, 2020). The Proof of Claim replaced an incomplete proof of claim originally filed by the Plaintiff on February 25, 2020.

[57] *Compl. to Determine Dischargeability of Debt*, ECF No. 1, at 25. Section 1328(a) provides that a chapter 13 discharge includes all the debts provided for by the plan, with certain enumerated exceptions, including § 523(a)(4). Because § 1328(a) incorporates § 523(a)(4) by reference, the Court's analysis will reference only § 523(a)(4), which excepts from discharge a debt incurred "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

determination by the Plaintiff as to whether to move forward on the merits in this Court or to await judgment in the District Court.[58] Notably, in the Court's *Memorandum Decision and Order re Motion for Default Judgment* (the "Teel Memorandum") containing the effective stay, Judge Teel advised the Plaintiff that as pled, it was unclear what causes of action in the District Court action were believed to be "of a nondischargeable character" in this case.[59] Judge Teel went on to say that in his review "the civil action amended complaint pleads some claims that are of a nondischargeable character, *and others that are not*."[60] The Teel Memorandum further addressed certain possible applications of § 523 to the Plaintiff's allegations against the Debtor, but noted that the same would require further specificity from the Plaintiff.[61] Despite the Teel Memorandum, the Plaintiff took no further action in this case until after resolution of the District Court Litigation.

On June 20, 2024, taking into consideration the results of the District Court Litigation, the Plaintiff filed its *Amended Complaint to Determine Dischargeability of Debt* (the "Amended Complaint").[62] That same day the Plaintiff filed an amendment to the Claim (the "Amended Claim") in total amount of the District Court Award, plus post-judgment interest.[63]

The Amended Complaint seeks a determination that the totality of the District Court Award is nondischargeable under §§ 523(a)(4) and 1328(a)(2) due to the Debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[64] The Amended Complaint contains extensive factual allegations and quotations from the District Court, thus primarily relying upon the District Court's findings in support of the cause of action for nondischargeability. However, despite extensive factual allegations, Count I (Nondischargeability) solely pleads as follows:

---

[58] *Mem. Decision and Order re Mot. for Default J.*, ECF No. 15, at 11 ("ORDERED that a further scheduling conference will not be held in this proceeding pending [Plaintiff's] deciding how it wishes to proceed.").

[59] *Id.* at 3.

[60] *Id.* at 5 (emphasis added).

[61] *Id.* at 5–9.

[62] *Am. Compl. to Determine Dischargeability of Debt*, ECF No. 23.

[63] Am. Proof of Claim No. 7-4, *In re Attariwala*, No. 19-828 (Bankr. D.D.C. Jun. 20, 2024).

[64] *Am. Compl. to Determine Dischargeability of Debt*, ECF No. 23, at 29.

97. Plaintiff incorporates and restates Paragraphs 1 through 96 herein.

98. Plaintiff's [Amended Claim] arises out of the Debtor's fraud, or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

99. Plaintiff's [Amended Claim], including, but not limited to, its claim for compensatory damages, attorneys' fees, litigation expenses and costs, against the Debtor, as set forth in the [Amended Claim], is not subject to the bankruptcy discharge pursuant to 11 U.S.C. §§ 523(a)(4) and 1328(a)(2).[65]

Notably, the Amended Complaint does not address the specificity of pleading advised and suggested by the Teel Memorandum as to what portion of the Findings of Fact and/or Damages Order meet the elements to plead a cause of action under § 523(a)(4).

The Plaintiff filed its Motion on September 13, 2024.[66] In its supporting memorandum, the Plaintiff quotes the Teel Memorandum's advisement regarding potential preclusive impacts of a judgment from the District Court if the claims were framed in the appropriate way.[67] The Plaintiff points to the findings of the District Court on the IUTSA and DTSA claims in support of a request for judgment under § 523(a)(4). Although not specifically stated, the Plaintiff appears to limit its request to the final basis under § 523(a)(4) for debts nondischargeable due to larceny.[68] The Plaintiff argues that the District Court's findings that the Debtor violated the IUTSA and DTSA, including that she "wrongly and with fraudulent intent" misappropriated trade secrets and took the Plaintiff's Confidential Information, are sufficient to meet the elements of larceny under § 523(a)(4). The Debtor contests whether the findings by the District Court as to IUTSA and DTSA are sufficient to satisfy the elements of larceny under § 523(a)(4), particularly in light of the abandonment of counts in the District Court Litigation more closely tied to the language of § 523(a)(4).

---

[65] *Id.* at 29.
[66] *Mot. Summ. J.*, ECF No. 34.
[67] *Mem. of Points and Authorities in Supp. of Mot. Summ. J.*, ECF No. 34-1, at 5–6.
[68] *Id.* at 28–39.

11

### III.   Analysis

The Plaintiff moves for summary judgment under Civil Rule 56, made applicable to this case by Bankruptcy Rule 7056. The Motion is completely predicated on the findings of fact and conclusions of law from the Final Orders.[69] Although the Debtor offers a different interpretation of the application of the District Court's findings, she does not contest the findings themselves.[70] Therefore, there is no dispute as to any fact, material or otherwise, and the Court may determine whether the Plaintiff is entitled to judgment as a matter of law.

### A. *Preclusive Effect of the Final Orders*

Since neither party disputes that the Final Orders are binding on the questions decided therein, the question before this Court is whether the findings (on breach of contract and violations of the IUTSA and DTSA) are preclusive as to the Plaintiff's cause of action under § 523(a)(4). Claim preclusion is not applicable here because while the litigation is based on the same exact facts and circumstances the claims herein are not the same claims as heard by the District Court.[71]

Issue preclusion, also called collateral estoppel, bars successive litigation of an issue of fact or law that was "was actually litigated, resolved in a valid court determination, and essential to that prior judgment, even if the issue recurs in the context of a different claim."[72] For a previous judgment to be issue preclusive, the party seeking preclusion must establish by a preponderance of the evidence that (i) the same issue was contested by the parties and submitted for judicial determination in the prior case; (ii) the issue was actually and necessarily determined by a court of

---

[69] *Mem. of P. & A. in Supp. of Mot. Summ. J.*, ECF No. 34-1, at 27–28.

[70] *See Opp'n to Mot. of Bioconvergence LLC d/b/a Singota Solutions for Summ. J.*, ECF No. 39, at 1.

[71] *See In re Adams*, 151 F.4th 144, 153 (3d Cir. 2025) ("Under the doctrine of claim preclusion, a prior final judgment forecloses successive litigation of the very same claim." (internal quotations omitted) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

[72] *Id.* (internal quotations omitted) (quoting *Taylor*, 553 U.S. at 892); *see also Klayman v. Neomi Rao, Hon*, 49 F.4th 550, 553 (D.C. Cir. 2022) (citing *Allen v. McCurry,* 449 U.S. 90, 94 (1980)) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.").

competent jurisdiction in that prior case; and (iii) preclusion in the second case will not work a basic unfairness to the party bound by the first determination.[73]

In this case, the second element is clearly met as the Final Orders are final, judicial determinations on the matters decided therein after a three-day bench trial. The third element is met because the Debtor had a full opportunity to defend the issues determined in the Final Orders in the District Court and, as a result, giving the District Court's findings and conclusions a preclusive effect herein does not work a basic unfairness to the Debtor. Thus, the first element is determinative as to whether some or all of the District Court's findings that the Debtor misappropriated trade secrets are preclusive as to the question of larceny under § 523(a)(4).

The IUTSA and DTSA provide that the owner of a trade secret that is misappropriated may bring a civil suit for damages.[74] Under the DTSA, misappropriation is acquisition of a trade secret by improper means or disclosure or use of a trade secret without express or implied consent.[75] Generally, the IUTSA broadly defines misappropriation as (1) acquisition of a trade secret by a person who knows that the trade secret was acquired by improper means; or (2) the disclosure or use of a trade secret without express or implied consent by someone who knew the trade secret was acquired under circumstances giving rise to a duty to maintain secrecy or by someone who owed a duty to maintain secrecy.[76] A plaintiff need only prove one definition or the other in order to be entitled to judgment.

The District Court found that the Debtor violated both definitions in each of the DTSA and IUTSA. First, the District Court found the Debtor acquired the Plaintiff's trade secrets using improper means, specifically in "clear violation of her duty to maintain the secrecy" of the Plaintiff's Confidential Information[77] and that the Debtor's attempts to hide or minimize her

---

[73] *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Johnson v. Sullivan*, 748 F. Supp. 2d 1, 10 (D.D.C. 2010) (citing *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007)).

[74] Findings of Fact, *supra* note 8, at 51 (citing 18 U.S.C. § 1836 *et seq.* and Ind. Code § 24-2-3-1 *et seq.*)

[75] *Id.* at 56 (citing 18 U.S.C. § 1839(5)(A)–(B)).

[76] *Id.* at 56–57 (quoting Ind. Code § 24-2-3-2 (2026)).

[77] *Id.* at 57–58.

acquisition supported the finding that the Debtor knew her acquisition was improper.[78] Secondly, the District Court found that the Debtor's conduct – including her use of Plaintiff's trade secrets to seek employment with a competitor, her creation of the "Leads – Emergent" document, and her stockpile of Plaintiff's Confidential Information – alternatively also constituted misappropriation of Plaintiff's trade secrets through improper use.[79] Ultimately, under both definitions, the District Court found that the Debtor's misappropriation was "willful and malicious."[80]

### B. Exception to Discharge

Exceptions to discharge should be construed narrowly, and the burden of proof is on the plaintiff to prove nondischargeability of the debt.[81] The Plaintiff alleges that the Amended Claim should be excluded from discharge pursuant to § 523(a)(4) as a debt procured through larceny. The definition of larceny under § 523(a)(4) is based on the federal common law for definition of a "felonious taking of another's property with the intent to convert it or deprive the owner of the same."[82] Thus, for a debt to be nondischargeable for larceny it must arise from (1) the unlawful taking and carrying away; (2) of property of another; (3) with the intent to convert the property to the taker's use; and (4) without consent of the owner.[83] The Debtor argues that the District Court's

---

[78] *Id.* at 59.

[79] *Id.* at 61–62.

[80] *Id.* at 72.

[81] *See Smith Mountain Bldg Supply LLC v. Shreve (In re Shreve)*, 386 B. R. 602, 605 (Bankr, W.D. Va. 2008) (citing *In re Rountree*, 478 F.3d 215, 219 (4th Cir. 2007)).

[82] *See Johnson v. Davis (In re Davis)*, 262 B.R. 663, 672 (Bankr. E.D. Va. 2001); *La Bella Dona Skin Care, Inc. v. Harton (In re Harton)*, No. 13-3028, 2013 Bankr. LEXIS 4113, at *10–11 (Bankr. E.D. Va. Oct. 1, 2013); *Rountrey v. Lee (In re Lee)*, 90 B.R. 202, 208 (Bankr. E.D. Va. 1988) (citing *Va. Comm'n of Game & Inland Fisheries v. Myers (In re Myers)*, 52 B.R. 901, 905 (Bankr. E.D. Va. 1985); *Moore v. United States*, 160 U.S. 268, 269 (1985); *accord Brown v. Brown (In re Brown)*, 331 B.R. 243, 249 (Bankr. W.D. Va. 2005); *Singh v. Sohail (In re Sohail)*, No. 08-03059-KRH, 2009 Bankr. LEXIS 1911, at *20 (Bankr. E.D. Va. June 25, 2009) (citing *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 672 (Bankr. E.D. Va. 2001)); *McCall v. Poos (In re Poos)*, 43 B.R. 180, 181 (Bankr. S.D. Ill. 1984).

[83] *Chun v. Aurangzaib (In re Aurangzaib)*, No. 24-1508, 2025 Bankr. LEXIS 44, at *10 (Bankr. N.J. Jan. 10, 2025) (quoting 4 Collier on Bankruptcy ¶ 523.10 (16th ed. 2025)). The fraudulent taking of another's property that is unlawful at the outset is larceny. Larceny is contrasted from embezzlement where the Debtor originally had the property lawfully and then fraudulently appropriated later. *See* 4 Collier on Bankruptcy ¶ 523.10 (16th ed. 2025); *see Wemer v. Hofmann (In re Hofmann)*, 144 B.R. 459, 464 (Bankr. N.D. 1992), *aff'd*, 5 F.3d 1170 (8th Cir. 1993); *U.S. Life Title Ins. Co. v. Dohm*, 19 B.R. 134, 138 (N.D. Ill. 1982); *see also Gore v. Kressner (In re Kressner)*, 155 B.R. 68, 74 (Bankr. S.D.N.Y. 1993). Thus, even if the Debtor's unlawful use was after the original lawful possession of property, the Plaintiff could still establish a cause of action under embezzlement. However, the District Court found that despite a potential legal right to possession of the Confidential Information prior to the end of the Debtor's

findings are not sufficient to support a finding of nondischargeability under § 523(a)(4) because the term "larceny" or similar is not contained within the Final Orders.

There is no question that the District Court's Final Orders are preclusive as to the final three elements of larceny under § 523(a)(4). The Confidential Information was the property (albeit in digital format) of the Plaintiff (second element) which the Debtor took with the intent to use for her benefit (third element) without the consent of the Plaintiff (fourth element).[84] Thus, the key inquiry here is whether the District Court's findings of "misappropriation" and "inappropriate acquisition" are sufficient as to be preclusive as to the question of whether such taking was "unlawful."

Detailed prior state or federal court judgments of misappropriation under applicable statute(s) have routinely been held to be sufficient to support a nondischargeability action under § 523(a)(4).[85] For example, in *La Bella Dona Skin Care, Inc. v. Harton*, the question was whether a previous state court judgment, which found that the debtor willfully and maliciously misappropriated her employer's confidential information was preclusive as to a claim for nondischargeability for larceny.[86] In *La Bella Dona*, mere days after creating her own competing business, the debtor entered her employer's property after hours, accessed the business's computer

---

employment, under the facts and circumstances of the case, the Confidential Information was improperly acquired and used by the Debtor at all times sufficient for a finding of larceny. Findings of Fact, *supra* note 8, at 66.

[84] *See, e.g.*, Findings of Fact, *supra* note 8, at 62 ("The name of the document leaves no doubt as to [the Debtor's] intention in creating it, and [the Debtor] has never provided any credible alternative explanation for her purpose."); *Id.* at 72 ("There can be no reasonable dispute here that [the Debtor's] actions in copying and retaining [Plaintiff's] trade secret information and using some of those trade secrets to create the 'Leads—Emergent' document were intentional, committed in conscious disregard of Plaintiff's rights, as demonstrated by the timing and extent of her theft of Plaintiff ESI and her extensive subsequent efforts to cover up her actions."); *Id.* at 60 ("This evidence considered as a whole is more than sufficient to prove by a preponderance of the evidence that [the Debtor] wrongfully acquired [the Plaintiff's] trade secrets . . . for purposes beyond any purpose that would have served her employer's interests.").

[85] *See Saturn Sys. v. Militare (In re Militare)*, No. 09-1132, 2011 Bankr. LEXIS 3843, at *11 (Bankr. D. Colo. Sept. 30, 2011) (applying Colorado law); *La Bella Dona Skin Care, Inc. v. Harton (In re Harton)*, No. 13-3028, 2013 Bankr. LEXIS 4113, at *10–11 (Bankr. E.D. Va. Oct. 1, 2013) (applying Virginia law); *Benz Research & Dev. Corp. v. Ebrahimpour (In re Ebrahimpour)*, 630 B.R. 643, 648–49 (Bankr. M.D. Fla. 2021) (applying Florida law). *But see Jordan v. Redmond (In re Redmond)*, 671 B.R. 904, 915–16 (Bankr. E.D. Pa. 2025) (holding that a state court's finding of "misappropriation" without additional sufficient analysis does not establish the requisite elements under § 523(a)(4)); *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (holding that a finding of misappropriation, without the requisite mental state, is insufficient to satisfy § 523(a)(4)).

[86] 2013 Bankr. LEXIS 4113, at *10–11.

system to print out appointment schedules for the next several months, and copied her employer's client contact information.[87] The state court entered a judgment holding that the debtor's use of the employer's system to obtain the client list was unauthorized and that the debtor's misappropriation was willful and malicious.[88] Ultimately, the state court's detailed findings and judgment were found to be preclusive as to the question that the debt was nondischargeable as larceny under § 523(a)(4).[89]

In this case, the District Court trial established that it was only three minutes after accepting the job offer with Emergent that the Debtor logged into her business computer, copied hundreds of documents and created reports containing the Plaintiff's Confidential Information, and transferred them to the "Jessie Docs" folder, which she saved to an external hard drive and then to her personal laptop. The District Court found that this conduct, plus more, was willful and malicious misappropriation of the Plaintiff's Confidential Information. While the Debtor originally had the right to access the Plaintiff's trade secrets, it was, in part, her "wholesale and intentional harvesting of [the Plaintiff's Confidential Information] coincident with her planned departure, in clear violation of her duty to maintain the secrecy of [the Plaintiff's] trade secret information" that was sufficient for the District Court to find improper acquisition under the IUTSA and DTSA.[90] The District Court found further support for the finding of improper acquisition in the Debtor's actions immediately after accepting her offer from Emergent and in the days preceding her resignation. Such actions were found to be outside any purpose that would have served the Plaintiff's interests and were thus "improper."[91] The District Court's findings that the Debtor's actions were improper are sufficient to find that her actions were unlawful because the

---

[87] *Id.* at *6–7.
[88] *Id.* at 7–8.
[89] *Id.* at 12–13.
[90] Findings of Fact, *supra* note 8, at 57–58.
[91] *Id.* at 60 (citing *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859 (N.D. Ill. 2001)).

very definition of "improper means" under the IUTSA and DTSA specifies unlawful actions.[92] As a result, such findings are more than sufficient to be preclusive as to the unlawful taking of the Plaintiff's property (first element). The Court finds that Final Orders as to judgment for violations of the IUTSA and DTSA are preclusive as to each element of nondischargeability under § 523(a)(4), and the Plaintiff is entitled to judgment as a matter of law.[93]

## IV. Conclusion

For the reasons stated herein, the Court **GRANTS** the Motion. As set forth in Part II(B), the Amended Claim consists solely of damages awarded to the Plaintiff in the Final Judgment as a result of the Debtor's violations of the IUTSA and DTSA, and, therefore, the entire Final Judgment is nondischargeable under § 523(a)(4).[94] A separate judgment order shall issue.

[Signed and dated above.]

Copies to: recipients of electronic notifications.

---

[92] *See* 18 U.S.C. § 1839(6) (defining improper means as "includ[ing] theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means"); *accord* Ind. Code § 24-2-3-2 (2026).

[93] *See Saturn Sys.*, 2011 Bankr. LEXIS 3843, at \*11–13 (holding that a state court's ruling finding misappropriation of trade secrets in violation of state law collaterally estopped the bankruptcy court from ruling those issues, and the debts were thus nondischargeable under § 523(a)(4)).

[94] *See Oparah v. Nwatulegwu (In re Nwatulegwu)*, No. 13-10011, 2013 Bankr. LEXIS 5201, at \*5 (Bankr. D.D.C. Dec. 12, 2013) ("A nondischargeable debt includes all of the damages flowing from the wrongful act.").